# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GERALD D. HALL, | : | |
| Petitioner, | : | CIVIL ACTION NO. 13-0094-CG-C |
| v. | : | CRIMINAL ACTION NO. 11-0165-CG-C |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | | |

## REPORT AND RECOMMENDATION

This cause is before the Court on petitioner Gerald D. Halls' motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 39), the response in opposition filed by the United States (Doc. 47), petitioner's reply to the government's response (Doc. 48), Hall's supplemental submission of additional authority (Doc. 50 & 51), the Government's supplemental response in opposition (Doc. 54) and Hall's reply in opposition to the United States' response (Doc. 58). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Hall's § 2255 motion be **DENIED**.

## I. FINDINGS OF FACT

On June 22, 2011, Hall was indicted on one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. 1, at 1-2.)[1] Hall made his initial appearance in this Court on July 6, 2011 (*see* Doc. 5), was arraigned on the charge

---

[1] The indictment informed Hall that as of a result of his December 17, 1992 conviction "for a crime punishable by imprisonment for a term exceeding one (1) year, to-wit: Burglary Third . . . in the Circuit Court of Mobile County, Alabama . . . [he] did knowingly possess, in and affecting commerce, four (4) firearms," not manufactured in Alabama, in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1.) "Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).

on the same day (Doc. 6), and was ordered detained on July 14, 2011 (Doc. 9).

During the July 26, 2011 Probation Office Conference, which was attended by Hall, his retained attorney (James R. Harper, Jr.),[2] Assistant United States Attorney Gina Vann and Probation Officer Vickie Orso, the participants, including petitioner, reviewed preliminary guideline calculations[3] showing that although Hall's indictment specifically charged that he had illegally possessed 4 firearms, the fact that there were actually 11 firearms as well as drugs found at the time of Hall's arrest, were all factors that would be considered during sentencing according to Worksheet A of the report on probation office conference. (Doc. 11, at 2.) A copy of this worksheet was provided to Hall and his attorney evinced by the attachment of a copy of Worksheet D from this report to his initial motion to vacate, set aside, or correct sentence. (Doc. 39, Ex. 1, at 30-32.) Worksheet D informs that it is generated based on the information contained in Worksheet A, which took into consideration the actual number of firearms and the discovery of drugs during Hall's arrest. (Doc. 11.) It is these preliminary guideline calculations that Hall alleges he reasonably believed would be applicable at sentencing according to information provided by Harper. (Doc. 40, at 10-12.) However, it should be noted that as early as July 26, 2011, Hall was in possession of all the information that was necessary to accurately calculate that his adjusted offense level would be 28 and his

---

[2]     Harper has represented Hall since 1999 in cases resulting in one felony conviction (possession of marijuana first) and four misdemeanor convictions (no pistol permit, two counts of possessing drug paraphernalia, harassing communication, and reckless endangerment).

[3]     "Attached are the guideline worksheets for your reference. These calculations are tentative based on the information known to the probation officer at this time. Additional factors, including relevant conduct, may apply if subsequent information becomes available. The parties should understand that these calculations are not binding on the Court or the probation officer." (Doc. 11, at 1.)

criminal history category would be VI. (Doc. 11, at 2-7.)[4] Eight days after the Probation

Office Conference, Hall, through Harper, notified this Court of his intent to plead guilty.

(Doc. 12.)

On August 17, 2011, Hall, with the assistance of retained counsel (Harper) signed

a Plea Agreement. (Doc. 15.)[5] Per the terms of this agreement, Hall presented the Court

with information needed to assess the voluntariness of his plea. First, he expressly gave

notice that he

> ". . . has had the benefit of legal counsel in negotiating this Plea
> Agreement. He has discussed the facts of this case with his attorney, and
> his attorney has explained to the defendant the essential legal elements of
> the criminal charge which has been brought against him."

(*Id*. at 2.) Secondly, he acknowledged that the penalties that could be imposed if he

pleaded guilty included:

---

[4]     There are two discrepancies between the preliminary guideline calculations presented to
the defendant and his attorney on July 29, 2011 (Doc. 11) and the final calculations contained in
the Pretrial Services Report on November 3, 2011 (Doc. 20), that yielded different Base Offense
Levels, 24 vs. 28. The errors made in the preliminary calculations were capable of detection by
anyone who took the time to review the Sentencing Guidelines for themselves in order to check
the accuracy of the preliminary calculations made by the Probation Officer. First, when
calculating the Base Offense Level, the preliminary calculations referenced 2K2.1(a)(6) instead of
2K2.1(a)(4)(A) causing a miscalculation of 6 levels, 14 vs. 20. It would have been clear to Hall
and his attorney that the appropriate base level was 20 because of the defendant's prior felony
conviction for drug possession listed in both reports. The second discrepancy in the two reports
involved the calculation of additional levels to be added to the base offense level pursuant to
2K2.1(b)(6), 6 vs. 4. Again, the preliminary calculations were in error, the correct number of
additional offense levels is 4 ("If the defendant used or possessed any firearm or ammunition in
connection with another felony offense; … increase by **4** levels.") (2010 Federal Sentencing
Guideline Manual & Supplement) (emphasis in original). The net result of the mistakes made in
the preliminary calculations was that Hall's Adjusted Offense Level was miscalculated by 4
levels even though the information necessary to reach a correct result was provided to all
participants. Thus, immediately after the Probation Office Conference, Hall and Harper had the
information from which it was easy to calculate that the sentence range most likely would be
110-137 months instead of 77-96 months.

[5]     "I have consulted with my counsel and fully understand all my rights with respect to the
offense charged in the Indictment pending against me. I have read this Plea Agreement and
carefully reviewed every part of it with my attorney. I understand this agreement, and I
voluntarily agree to it." (*Id*. at 13.)

The maximum penalty the Court could impose as to Count One of the Indictment is:

a.   10 years imprisonment;
b.   A fine not to exceed $250,000.00;
c.   A term of supervised release of 3 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;
d.   A mandatory special assessment of $100.00; and
e.   Such restitution as may be ordered by the Court.

(*Id*. at 4)  Third, he made clear that he understood that if the trial judge accepted his guilty plea an advisory sentence range could not be reasonably calculated until a pre-sentence investigation was completed.

The Court will impose the sentence in this case.  The United States Sentencing Guidelines are advisory and do not bind the Court.  The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation.  The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines.  **The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.**

(*Id*. at 4-5 (emphasis added).) Fourth, in a separate factual resume attached to the plea agreement, Hall agreed that the facts contained in the resume were true and correct. (*Id*. at 3; *see also* Doc. 15, at 14-16 (the factual resume in addition to the plea agreement, is also signed by Hall).)  A crucial fact contained therein was that he "was seen walking out of the bedroom that he slept in when he visited his sister. This bedroom contained eleven firearms and ammunition." (*Id*. at 15.)   Fifth, the plea agreement also contains a provision providing a **Limited Waiver of Right to Appeal and Waiver of Collateral Attack**:

4

22. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, **the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.**

Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence (including a sentence imposed on revocation of probation or supervised release) in any district court or appellate court proceedings.

a. **EXCEPTIONS**. The defendant reserves the right to timely file a direct appeal challenging:

(1) any sentence imposed in excess of the statutory maximum;

(2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

(Doc. 15, at 11 (emphasis added).) Lastly, the plea agreement provides that "[t]his document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties." (*Id.* at 12.)

Later that day, Hall appeared before the Honorable Callie V.S. Granade for his plea colloquy pursuant to Rule 11, Fed.R.Cr.P. (Doc. 16; *see also* Doc. 40 (transcript).) During the plea colloquy, the Court specifically asked Hall:

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in your case by your attorney?

DEFENDANT HALL: Yes, ma'am.

. . .

THE COURT: Now, [ ] Mr. Hall . . . I've been provided with a plea agreement and an attached factual resume, and I want . . . you to look at those documents and tell me on the record whether that is your plea agreement and factual resume and whether you signed those documents.

DEFENDANT HALL:      Yes, ma'am.

. . .

THE COURT:      All right. For Mr. Hall . . . did . . . you have the opportunity to read and discuss the plea agreement with your lawyer before you signed it?

DEFENDANT HALL:      Yes, ma'am.

. . .

THE COURT:      And do you have any agreements with the United States Government concerning your case that are not written down in your plea agreement?

DEFENDANT HALL:      No, ma'am.

. . .

THE COURT:      Do you understand the terms of your plea agreement?

DEFENDANT HALL:      Yes, ma'am.

. . .

THE COURT:      Has anyone made any other or different promises or assurances to you of any kind in an effort to induce you to plead guilty in your case?

DEFENDANT HALL:      No, ma'am.

. . .

THE COURT:      Do you understand that certain of the terms of your plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than you might anticipate?

DEFENDANT HALL:      Yes, ma'am.

. . .

THE COURT:      Are you pleading guilty of your own free will because you are guilty?

DEFENDANT HALL:        Yes, ma'am.

. . .

THE COURT:        Now, the offense to which you are pleading guilty has an enhancement provision which applies only in certain circumstances and I don't know whether it applies in your case or not, because I don't know your entire criminal history.   But if you have three qualifying violent felony convictions or drug convictions in your background, that changes the penalty in your case and that would be a minimum mandatory 15 years up to life imprisonment. I need to tell you about that simply because I do not know whether it applies in your case. Do you understand that that's a possibility if you have those qualifying convictions in your background?

DEFENDANT HALL:        Yes, ma'am.

. . . .

THE COURT:        All right. Now, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?

DEFENDANT HALL:        Yes, ma'am.

. . .

THE COURT:        Do you understand that the Court will not be able to determine the guideline sentencing range for your case until after the probation office has prepared a presentence report and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the guideline range determined by the Court may be different from any estimate your attorney or anybody else might have given you in this case?

DEFENDANT HALL:        Yes, ma'am.

. . .

THE COURT:          Do you also understand that, once the guideline range
                    has been determined, the guidelines further provide for
                    departures either upwards or downwards from that range in
                    certain circumstances?

DEFENDANT HALL:          Yes, ma'am.

. . .

THE COURT:          And do you also understand that, although the Court
                    is required to consider the guidelines when determining the
                    sentence, the guidelines are advisory and do not necessarily
                    control the sentence imposed?

DEFENDANT HALL:          Yes, ma'am.

. . .

THE COURT:          All right. And for Mr. Hall . . . you have [  ] entered
                    into a plea agreement which waives certain of your rights to
                    appeal the sentence, and in [  ] your case[] you have retained
                    the right to appeal the sentence only if sentence is imposed
                    in excess of the statutory maximum or if the sentence is
                    imposed that constitutes an upward departure or variance
                    from the sentencing guideline range. Do . . . you understand
                    that you have waived your right to appeal in all but those
                    two circumstances outlined in your plea agreement?

DEFENDANT HALL:          Yes, ma' am.

. . .

THE COURT:          And do . . . you also understand that you have
                    waived your right to file a collateral attack on your
                    conviction once it becomes final?

DEFENDANT HALL:          Yes, ma' am.

. . . .

THE COURT:          All right. Now, for Mr. Hall . . ., I asked you earlier if
                    you had signed the factual resume attached to your plea
                    agreement and you said that you had. And I want to make
                    sure that you understand that by signing the factual resume
                    you are agreeing that the government could prove the facts
                    set forth in that document in order to support your guilty

plea. Do . . . you understand and agree to that?

DEFENDANT HALL:          Yes, ma'am.

. . .

THE COURT:          . . . Now, as I stated earlier, the probation office will
                         be preparing a presentence report.

(Doc. 40, at 5-7, 9-11, 15, 17.)  As demonstrated by the above testimony, Hall agreed that

he understood that the presentence investigation report was not yet completed and that,

once completed, the report is a mere guideline for the Court to consider and is not

binding on the Court's decision regarding sentencing. (*See id*.)

On October 5, 2011, a draft of the presentence investigation report was submitted.

(Doc. 17.) This report contained both the U.S.S.G. § 2(k)2.1(b)(1)(B) and § 2k2.1(b)(6)

sentencing enhancements that the defendant now alleges came as a surprise during his

sentencing hearing. (*Id*. at 6; *see also* Doc. 39, at 5.) The final calculation of the guideline

range, to which no objection has been presented, resulted in a recommendation that the

sentence range should be between 110 to 137 months, which was reduced to 110 to 120

months in accordance with the statutory maximum penalty as directed by U.S.S.G. §

5G1.1(c)(1). (Doc. 17, at 17.)

On November 1, 2011, Harper filed his client's position regarding these

sentencing factors *without objections* to the report as filed. (Doc. 18 (emphasis added).)[6]

On November 3, 2011, a final presentence investigation report was filed with this Court.

(Doc. 20.)  The only change in the report was a modification to paragraph 73, which had

---

[6]          "COMES NOW the Defendant . . . and states that the Defendant has no objections to the
Presentence Report, including the application of the sentencing guidelines filed by the United
States Probation Office." (Doc. 18, at 1.)

incorrectly indicated that Hall's attorney, Harper, was appointed rather than retained. (*Compare* Doc. 17, at 17 *with* Doc. 20, at 17.)[7] There were no other changes. (*Id.*) Along with the report, the U.S. Probation Officer filed a certification "that the presentence report, including any revision thereof, has been provided to the defendant's attorney for disclosure to the defendant." (Doc. 21.) The certification also makes note that, "[t]o date, the defendant, through counsel, has not filed objections." (*Id.*)

One hundred and four (104) days later, Hall appeared before this Court for sentencing. (Doc. 28.) Even though no objections were ever filed to the recommendations in the presentence report, Hall's attorney did take the opportunity to point out to Judge Granade the variance in the preliminary and final guideline calculations.

THE COURT:      All right. Mr. Harper, have you and Mr. Hall been over the presentence report?

MR. HARPER:      Yes, ma' am.

THE COURT:      And are there any objections to it?

MR. HARPER:      No, ma' am.

THE COURT:      All right. I find that the total offense level in this case is 25 with a criminal history category of VI. Are there any objections to those findings?

---

[7]      Paragraph 73 of Doc. 17 states: "The defendant is unemployed, and upon his release he will be dependent on others for financial assistance. **Hall's** attorney has been appointed by the Court. At the present time, the defendant does not appear to have the ability to pay a fine. Further, the defendant's lack of marketable job skills, and his extended absence from the job market make it unlikely that he will possess the future ability to pay a fine." (*Id.* (emphasis in original).) The foregoing language can be compared with that contained in the Final Presentence Investigation Report, which reads: "The defendant is unemployed, and upon his release he will be dependent on others for financial assistance. Although **Hall's** attorney has been retained, the defendant does not appear to have the ability to pay a fine. Further, the defendant's lack of marketable job skills, and his extended absence from the job market[,] make it unlikely that he will possess the future ability to pay a fine." (Doc. 20, at ¶ 73 (emphasis in original).)

10

MR. HARPER:        No, ma' am.

THE COURT:        All right. I'll hear from you on behalf of your client.

MR. HARPER:        Your Honor, as in all criminal cases, there's sort of a set way of doing things, if you're going to plead guilty or if you're not. But the preconference, or probation conference here, had determined a different guideline range than the presentence guideline range. His guideline range was 77 to 96 months minimum and the presentence was 110 to 120 months. I talked to the probation officer about it and, of course, it was a good length of time between these two instances. But the probation office said, well, they just made a mistake.

So, [] I would point out that the discrepancy was done at the time, and then when we sort of got an almost maximum-sentence guideline on this, it was a pretty good shock to us and to Mr. Hall.

Judge, Mr. Hall has tried to assist the government, he has tried to assist his arresting officers, his family's tried to help. He obviously was locked up and limited in his ability, but he earnestly tried.

He doesn't have any violent crimes, Judge. He's been smoking marijuana all his life. And if you look at his history, that's pretty much where he's been all this time.

I think the arresting officers tried to help him out on this. And I think several people have tried to help him out. And she told me that he has a job waiting on him with her brother. He was working for her brother when she arrested him, and that he's willing to take him back once he gets out of jail.

And, Judge, I have one family member would like to say something as well. I just would like you to take into consideration that the guidelines, because of his extensive criminal history - - and smoking pot is what it is, Judge, and he was clean of everything when he was arrested, except pot, as well; they drug tested him - - but to not go by the maximum guidelines and try to go by the ones that were originally talked about, the 77 months or something like that. And it's almost three years' difference in the sentence.

And like I said, I would ask you to take into consideration

that I've known Gerald for 15 years probably. I don't know him to be anything but a good ol' boy up in the country smoking dope and fishing.

And, Judge, the other thing I would like to point out, there's 11 guns charged, which raised the stakes on his sentence. And he was staying at his sister's house that night. He told the - - Gerald, I've never known him to lie to the police, either. He told the officers that: "If you check, there's two pistols up there. I cleaned them, my fingerprints will be on them, and I went hunting last night with a shotgun," or whatever it was.

The rest of those guns were just in that closet that belonged to his sister, her sons, that type of thing. I know he's charged with them and we've admitted to that, you know, he was in there and we're not arguing over that. But I'd ask you to consider that he wasn't walking around with 11 shotguns or something like that in his car or that type of thing, o[r] trafficking in guns or anything like that. He admitted he went hunting and he cleaned a couple of those guns.

. . .

THE COURT:        All right. Well, Mr. Harper, I understand your position on what the original guideline calculation was. But, as I tell everybody when they plead guilty, the guideline calculation that is initially arrived at usually doesn't have all the information available, such as all the convictions or whatever the background is. And so the final guideline determination that is made by the Court is quite often different and quite often higher than the original one. And so, as I told Mr. Hall when he pled guilty, the sentence may well be higher than he might anticipate. And that turns out to be the case here.

I can't say that the guidelines are overly strict in this case, because he does have a very lengthy criminal history, and that includes burglary and several drug charges.

I think he came fairly close to hitting the mark with the 15-year minimum mandatory, and he's very fortunate that that did not occur, because his guidelines would have been, then, a 15-year minimum sentence up to life imprisonment, if he had had one more conviction for a drug offense or a crime of violence – and burglary of a dwelling is considered a crime of violence under the guidelines.

So I find that the guidelines sentence is appropriate here. And I do intend to sentence, according with the government's recommendation, to the low end. But I realize that it's not much below the statutory maximum in this case.

. . .

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Gerald Wayne Hall, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 110 months as to count one.

. . .

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years on count one.

. . .

As I stated earlier, I do find the advisory guideline range is appropriate to the facts and circumstances of this case and does provide for a reasonable sentence, given the statutory purposes of sentencing.

. . .

Now, having stated the sentence that I intend to impose, are there any legal objections to it?

MR. HARPER:     No, Your Honor.

. . .

THE COURT:     All right. I hereby impose the sentence as previously stated.

Now, Mr. Hall, you can appeal your conviction if you believe your guilty plea was unlawful or involuntary or if there's some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal the sentence itself. However, your plea agreement contained a waiver of certain of your rights to appeal the sentence. Such waivers are

> generally enforceable. But if you believe the waiver to be
> unenforceable, you could test that theory in the appellate
> court. If you decide to appeal, you must do so within 14 days
> of entry of judgment in this case, and Mr. Harper could file
> that notice for you.

(Doc. 28, Sentencing Transcript, at 2-4, 6-9.) No direct appeal was ever filed in this

case. (*See* Doc. 39.)

## II. CLAIMS

On February 15, 2013, Hall filed a Motion to Vacate pursuant to 28 U.S.C. 2255.

(*Id.*) Hall alleges that he "was denied his Sixth Amendment right to the effective

assistance [of counsel] during [the] plea negotiation process"[8] and that he "was denied

his Sixth Amendment right to the effective assistance of counsel at the sentencing phase

of [the] criminal proceeding." (Id. at 4-5.)[9]

## III. CONCLUSIONS OF LAW

A. Motions To Vacate A Sentence.

Section 2255 reads, in pertinent part, as follows:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack, may move the court
> which imposed the sentence to vacate, set aside or correct the sentence.

---

[8]     "Movant contends that defense counsel Jim Harper denied him his Sixth Amendment
right to the effective assistance of counsel based upon the following fact(s): a) Counsel
misrepresented the fact that by pleading guilty to Count One of the indictment the government
would 'only' rely upon four (4) firearms as alleged in the Factual Basis, b) that he would receive
a sentence of no more than 77 months, and misrepresented that Movant would not be enhanced
for the eleven (11) firearms pursuant to U.S.S.G. § 2K2.1(b)(1)(B)." (Doc. 39, at 4.)

[9]     "Movant contends defense counsel Jim Harper was ineffective for failing to object to the
sentence enhancements imposed pursuant to U.S.S.G. § 2K2.1 (b) & U.S.S.G. § 2K2.1(b)(6), and
that the Court clearly erred in its application of said enhancements." (Doc. 39, at 5.)

28 U.S.C. § 2255(a).

B.  Scope Of Relief Under § 2255.

The scope of collateral relief to a conviction is limited:

> Collateral relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)*; *see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir.2004)* ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Frady, 456 U.S. at 164*. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *United States v.. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)*. Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack.... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v.. United States, 598 F.2d 439, 441 (5th Cir.1979)*.

*United States v. Evans,* 2008 WL 3200694 at *3 (S.D.Ala. Aug. 6, 2008).

C.  Procedural Default.

The general rule of thumb is that claims which could have been raised on direct appeal may not be pursued in a 2255 motion. *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also McKay v. United States,* 657 F.3d 1190, 1196 (11th Cir. 2011) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." (internal quotation marks and citation omitted)).  In those cases where the defendant pleads guilty, the voluntariness and intelligence of his guilty plea can be attacked on collateral review only in those instances where this claim was pursued on direct review. *Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed. 2d

828 (1998). Defaulted claims are barred from collateral review unless the moving party is able to demonstrate cause and prejudice or that he is actually innocent[10] of the crime underlying his sentence. *Id.* at 622 & 623, 118 S.Ct. at 1611.

In order to excuse a procedural default, the cause ordinarily deemed sufficient is when some external impediment has prevented "counsel from constructing or raising the claim." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986). "Constitutionally ineffective assistance of counsel can constitute cause." *Holladay v. Haley,* 209 F.3d 1243, 1254 (11th Cir.) (citations omitted), *cert. denied,* 531 U.S. 1017, 121 S.Ct. 578, 148 L.Ed.2d 495 (2000). "In order to do so, however, the claim of ineffective assistance must have merit." *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir.2000) (citation omitted), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 892, 148 L.Ed.2d 799 (2001).

"To demonstrate prejudice, the second prong, [Hall] 'must shoulder the burden of showing, not merely that the errors [of] his [attorney] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [court proceedings] with error of constitutional dimensions.' *Brown v. United States,* 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *United States v. Frady, supra,* 456 U.S. at 170, 102 S.Ct. at 1596), *cert. denied,* 2014 WL 772423 (Oct. 6, 2014).

D. Waiver Of Rights To Appeal A Plea of Guilty.

As outlined above, Hall signed the Plea Agreement on August 17, 2011. (Doc. 15.) Per the terms of the agreement, Hall waived his right to file any "motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255." (*Id.* at 11.) The government argues that this waiver procedurally bars Hall's ability to bring this action. (Doc. 47, at 2.) Hall

---

[10]    Mr. Hall does not assert that he is actually innocent of the charge that he possessed firearms after having been convicted of a felony offense.

alleges that the "constitutionally deficient performance of his counsel tainted the plea negotiations process, resulting in plea and waiver that were not made knowingly, intelligently, or voluntarily." (Doc. 39, at 5.)

"It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir.), *cert. denied,* 546 U.S. 902, 126 S.Ct. 246, 163 L.Ed.2d 226 (2005). The *Williams* court, for the first time, determined that "a valid sentence-appeal waiver, entered into voluntarily and knowingly pursuant to a plea agreement, precludes the defendant from attempting to attack, **in a collateral proceeding**, the sentence through a claim of ineffective assistance of counsel during sentencing." *Id.* at 1342 (emphasis added). Therefore, when it is determined that a petitioner has knowingly and voluntarily waived his right to attack his sentence collaterally, he is barred from pursuing collateral relief under § 2255 based on ineffective assistance of counsel at sentencing. The Eleventh Circuit "will enforce a sentence appeal waiver if the government demonstrates either that '(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'" *Lattimore v. United States*, 185 Fed. Appx. 808, 810 (11th Cir. 2006), quoting *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).

E. *Strickland v. Washington* Standard.

Hall preeminently contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255. (Doc. 39.) In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his

attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States*, 478 Fed.Appx. 536, 539-40 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").[11] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States*, 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002). The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to the entry of guilty pleas in *Hill v. Lockhart.* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[12] In addition, the

---

[11]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[12]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.[13]

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnotes, brackets and ellipses added), *cert. denied*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996). Indeed, in the guilty-plea context, the Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States*, 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).[14]

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation

---

[13]     "The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial." *Rosado v. Secretary, Dep't of Corrections*, 2010 WL 2976886, *4  (M.D. Fla. July 20, 2010) (citations omitted).

[14]     "'To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.'" *Id.*, quoting *Wofford*, 748 F.2d at 1508.

omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 22347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. July 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

In undertaking this analysis, courts "must avoid second-guessing counsel's performance[,]" must avoid "using 'the distorting effects of hindsight,' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" *Chandler v. United States,* 218 F.3d. 1305, 1314 & 1316 (11th Cir. 2000) (citation omitted), *cert. denied,* 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). Further, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* at 1314 (citations omitted). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (citation omitted).

## IV. ANALYSIS

A. Ineffective Assistance of Counsel During Plea Negotiations.

Hall contends that his retained attorney (Jim Harper) failed to protect his right to a fair and equitable plea agreement because "counsel misrepresented the fact that by pleading guilty to Count One of the indictment, the government would 'only' rely upon

four (4) firearms as alleged in the Factual Resume/Basis." (*See* Doc. 39, Ex.1, at 8.) Hall alleges that instead, the Government relied upon all 11 firearms that were seized when he was arrested. (Id. at 9.) Hall believes that, as a result, he was erroneously assessed 2 additional enhancement points under the United States Sentencing Guidelines. (*Id*. at 19.) Under the sentencing guidelines, "if the offense involved three or more firearms, - [the guideline range will be] increase[d] as follows . . . (A) 3-7 . . . add 2 . . . (B) 8-24 . . . add 4." U.S.S.G. § 2K2.1(b)(1)(A) & (B).

To the extent that Hall alleges that his plea was not entered intelligently and voluntarily, he clearly had the necessary information to submit this claim on direct appeal.[15] His failure to take advantage of that opportunity bars the claim from collateral review without a showing of either cause and actual prejudice or actual innocence. *Bousley, supra,* 523 U.S. at 621, 118 S.Ct. at 1610.

> "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and "'will not be allowed to do service for an appeal.'" *Reed v. Farley,* 512 U.S. 339, 354, 114

---

[15]    Hall is attacking the intelligence of his plea, not the voluntariness of his decision. No force or promises were utilized to obtain his plea. He only relates that he was misled by his attorney's calculation of what his sentencing range would be even though he was clearly advised that the Court would determine the range and that it could not be calculated at the time of his plea. See *Bousley,* 523 U.S. at 621 & 621-622, 118 S.Ct. at 1610 & 1610-1611 ("In this case, petitioner contested his sentence on appeal, but did not challenge the validity of his plea. In failing to do so, petitioner procedurally defaulted the claim he now presses on us…. In *Waley v. Johnston,* 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942) (*per curiam*), we held that there was such an exception for a claim that a plea of guilty had been coerced by threats made by a Government agent, when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.' *Id., at 104, 62 S.Ct., at 966.* Petitioner's claim, however, differs significantly from that advanced in *Waley.* He is not arguing that his guilty plea was involuntary because it was coerced, but rather that it was not intelligent because the information provided him by the District Court at his plea colloquy was erroneous. This type of claim can be fully and completely addressed on direct review based on the record created at the plea colloquy.")

S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Sunal v. Large,* 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591, 91 L.Ed. 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

…

Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643-2644, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-2507, 53 L.Ed.2d 594 (1977), or that he is "actually innocent," *Murray, supra,* at 496, 106 S.Ct., at 2649-2650; *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667-2668, 91 L.Ed.2d 434 (1986).

*Id.* at 621 & 622, 118 S.Ct. at 1610 & 1611.

Hall's Petition does not contain a showing of cause for his failure to challenge the validity of his plea on direct appeal. There is no allegation or proof that he is actually innocent of possessing firearms (whether four or eleven) after having been convicted of a drug-related felony offense. Accordingly, this claim is barred by the doctrine of procedural default.

A review of the merits of this claim does not change the outcome. The plea colloquy with Judge Granade completely satisfied the requirements of Rule 11, Federal Rules of Criminal Procedure.

Fed.R.Crim.P. 11 requires a district court to "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea," before the court accepts the plea. *United States v. Hernandez–Fraire,* 208 F.3d 945, 949 (11th Cir.2000). For a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty,* 429 F.3d 1012, 1019 (11th Cir.2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea ... must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). When considering the effect of any errors in the taking of the

guilty plea, the Court may look to the entire record as a whole. *U.S. v. Vonn,* 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

*United States v. Day,* 2012 WL 1230624, *2 (N.D. Fla. March 14, 2012), *report and recommendation adopted, United States v. Day*, 2012 WL 1230823 (N.D. Fla. April 11, 2012), *cert. denied*, 134 S.Ct. 2151, 82 USLW 3651 (2014).

Regardless of what he may have understood the guideline range to be after the Probation Office Conference, when Hall appeared before Judge Granade for a change-of-plea hearing, he was notified of the minimum and maximum sentences that would apply in his case and further, that the guideline range could not be calculated at the plea hearing but must await the completion of the presentence investigation. In addition, when Judge Granade provided him with this information, he clearly and unequivocally gave his sworn statement that he understood. His understanding that the preliminary guideline calculations would not control the ultimate decision on sentencing did not deter his decision to enter a guilty plea.

The record is replete with evidence that Hall did not have a reasonable expectation that the Government would agree to a two level enhancement as opposed to four levels. He was arrested in his sister's home where all eleven firearms were found. During the plea negotiations, he and his attorney executed a plea agreement, which recorded the entirety of their agreement and contained a factual resume that clearly included all eleven firearms. When Judge Granade advised him that the Sentencing Guidelines were advisory and could not be calculated until the pretrial investigation was complete, his response was unequivocal – he understood. Even after the Pretrial Services Report was filed, neither he nor Mr. Harper disputed the fact that his Base Offense Level should be increased by four levels because of the number of firearms discovered.

As recently underscored by a district court in this Circuit, "[a] criminal defendant does not have the right to obtain a plea agreement with terms tailored to his liking." *Hernandez v. United* States, 2012 WL 728208, *2 (M.D. Fla. Mar. 6, 2012). This is because "the decision of whether to offer a plea agreement and what terms to include in that agreement are matters of prosecutorial discretion[.]" *Id.,* citing *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.") (other citation omitted). Given the government's discretion in this regard, along with record evidence placing Hall on notice of the applicability of the § 2K2.1(b)(1)(B) enhancement (Doc. 11, at 2)—as well as petitioner's admission that at the time of the arrest there were 11 firearms present (*see* Doc. 15, at 15 (The factual statement that Hall signed states that "Hall was seen walking out of the bedroom that he slept in when he visited his sister. This bedroom contained eleven firearms.")—petitioner's conclusory speculation that his attorney could have bargained with the government for a more favorable plea agreement fails. *Compare Hernandez, supra,* at *2 ("Vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim.") and *Williams v. United States,* 2011 WL 3268308, *5 (M.D. Fla. Aug. 1, 2011) (same) *with Chavez v. Secretary Florida Dep't of Corrections,* 647 F.3d 1057, 1061 (11th Cir. 2011) ("The allegations must be factual and specific, not conclusory."), *cert. denied,* 132 S.Ct. 1018, 181 L.Ed.2d 752 (2012).

Hall alleges, however, that during plea negotiations Harper advised him that the government would not elevate the enhancements under § 2K2.1(b)(1)(B), which Hall understood meant that the government would only take into account 4 of the 11 firearms

that were found when Hall was arrested. (Doc. 39, Ex. 1, at 8-9.) The crux of this argument is that he believed that the government would only seek the low end of a 77-96 month sentence compared to the 110-120 month sentence found to be applicable at sentencing. (*Id.* at 9.) It is Hall's contention that had he known the government was going to seek enhancement, which he believes led to the higher recommended sentence, he would have pleaded not guilty and proceeded to trial. (*Id.*)[16] Hall bases his belief that the four level enhancement would not be considered at sentencing on the preliminary calculations contained in the initial worksheet that he was presented during the Probation Office Conference. (Doc. 11, at 7.) However, it is clear that Harper cleared up any misunderstanding of the possible sentencing range prior to the Court's imposition of sentence:

> Your Honor, as in all criminal cases, there's sort of a set way of doing things, if you're going to plead guilty or if you're not. But the preconference, or probation conference here, had determined a different guideline range than the presentence guideline range. His guideline range was 77 to 96 months minimum and the presentence was 110 to 120 months. I talked to the probation officer about it and, of course, it was a good length of time between these two instances. But the probation office said, well, they just made a mistake.

(Doc. 28, at 2-3 (Statement of James Harper, Jr., Esq. during Hall's sentencing hearing).) Even with a clear understanding of the applicable guideline range, Hall and Harper completed the sentencing hearing without voicing a single objection to the corrected calculations.

---

[16] This self-serving statement should be rejected as unsupported by the record. Given the witness testimony, physical evidence, and Hall's admission that he possessed at least four of the eleven firearms, a conviction would have been a foregone conclusion had he proceeded to trial. No evidence has been presented that would establish a viable defense or that the Government would have had difficulty in proving his guilt beyond a reasonable doubt. A decision to go to trial would have caused Hall to lose the three-point reduction in his offense level, as well as the Government's agreement to recommend a sentence at the low end of the guidelines.

What Hall fails to recognize is that the critical change between the initial probation conference and the final presentence report was not the application of the enhancements, but an increase in Hall's actual base offense level. (*Compare* Doc. 11, at 2 (base offense level of 14) *with* Doc. 20, at 6 (base offense level of 20).) Both calculations take into consideration the use of § 2K2.1(b)(1)(B) and § 2K2.1(b)(6)[17] enhancements. (*Id.*) Further, the Court specifically warned Hall during the plea colloquy that this could happen:

> THE COURT:    All right. Now, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?
>
> DEFENDANT HALL:    Yes, ma'am.
>
> . . .
>
> THE COURT:    Do you understand that the Court will not be able to determine the guideline sentencing range for your case until after the probation office has prepared a presentence report and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the guideline range determined by the Court may be different from any estimate your attorney or anybody else might have given you in this case?
>
> DEFENDANT HALL:    Yes, ma'am.
>
> . . .
>
> THE COURT:    Do you also understand that, once the guideline range has been determined, the guidelines further provide for departures either upwards or downwards from that range in certain circumstances?

---

[17] As previously stated, the correction of the original computation with regard to this enhancement operated in Hall's favor. The original enhancement was projected to be six levels but was reduced to four at sentencing.

DEFENDANT HALL:        Yes, ma'am.

. . .

THE COURT:        And do you also understand that, although the Court is required to consider the guidelines when determining the sentence, the guidelines are advisory and do not necessarily control the sentence imposed?

DEFENDANT HALL:        Yes, ma'am.

(Doc. 40 (plea colloquy), at 10-11.) Thus, Hall was advised prior to pleading guilty that the initial probation office report regarding his potential sentencing exposure was not a complete report and could change based upon a completion of the investigation into his criminal history and background. (*Id.*) Hall was also aware that the Court has the discretionary power to consider the sentencing guidelines as "advisory" and that his sentence could differ from that recommended to the Court. (*Id.*)

Thus, any mistakes that Harper made in calculating the guideline range prior to the entry of his guilty plea do not prove deficient performance or that Hall was prejudiced by the actions of Harper. Hall knew that the final calculations could be higher and that they were only advisory. Hall clearly knew and understood with certainty what the applicable minimum and maximum sentences were.  It is also without doubt that the increase in Hall's sentencing guideline range was not the result of any change in the preliminary calculations as to the applicability of a § 2K2.1(b)(1)(B) enhancement. (Doc. 20, at 6.) Therefore, Hall cannot establish that Harper rendered ineffective assistance of counsel during the plea negotiations. Thus, this claim lacks merit.

B.  Ineffective Assistance During Sentencing.

    1.  Sentencing Enhancements.

27

Hall is procedurally barred from collaterally attacking his sentence since the collateral attack waiver in Hall's plea agreement is valid. Judge Granade specifically questioned Hall about the waiver portion of the plea agreement when she questioned him during the change-of-plea hearing. Hall confirmed for her and convinced her that he had knowingly, intelligently and voluntarily entered into a waiver of his right to seek collateral relief except in two instances: if the sentence imposed was in excess of the statutory maximum or would constitute an upward departure or variance from the sentencing guideline range. Since neither of those situations applies, his habeas petition on this claim is barred and he has failed to establish any reason to excuse the bar.

In addition to being foreclosed by the collateral attack waiver in his plea agreement, Hall's ineffective assistance of counsel claim during the sentencing phase is without merit as well. Hall alleges that his retained counsel was ineffective during the sentencing phase "for failing to object to the sentence enhancements imposed pursuant to U.S.S.G. § 2K2.1(b)(1)(B) and § 2K2.1(b)(6)." (Doc. 39, at 5.) As addressed in more detail above, in order for Hall to establish a claim of ineffective assistance of counsel, he must prove (1) that his attorney's representation fell below "an objective standard of reasonableness"[18] and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different."[19] *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The *Strickland* standard for evaluating claims

---

[18]    In order to establish that the attorney's performance was "deficient," the petitioner must be able to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland, supra*, 466 U.S. at 687, 104 S.Ct. at 2064.

[19]    This prong requires the defendant to establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. Thus, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (footnote omitted).

of ineffective assistance of counsel was held applicable to the entry of guilty pleas in *Hill v. Lockhart*, 474 U.S. at 58, 106 S.Ct. at 370.

Additionally, as explained above, in considering the framework established by *Strickland*, courts "must avoid second-guessing counsel's performance[,]" must avoid "using 'the distorting effects of hindsight,' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" *Chandler, supra*, 218 F.3d at 1314 & 1316 (citation omitted). Further, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id*. at 1314 (citations omitted). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id*. (citation omitted).

There are numerous reasons why this Court cannot find that the strategy pursued by Hall's attorney was one that no other competent counsel would have pursued. Counsel knew that the residence in which the guns outlined in count one of the indictment were found, Hall's sister's home, was a residence Hall was very familiar with and was known to spend a substantial amount of time. (*See* Doc. 15, Factual Resume, at 15.) Harper also knew many other things, including the following: (1) that Hall was observed by the arresting officers leaving the room in his sister's residence where all 11 firearms were discovered and, indeed, he admitted that his fingerprints would be found on 4 of the 11 guns seized from the room where he stayed (*see id.*); (2) that Hall admitted the police seized 11 guns from this room; (3) that during Hall's arrest, the police also found and charged Hall with felony possession of a controlled substance (Doc. 20, at 6,

14; Doc. 47, Ex. A); (4) that a violation of § 922(g)(1) can be established through evidence

of constructive possession;[20] (5) that the worksheets provided by the probation office

during the conference with Hall and Harper prior to the signing of the plea agreement

---

[20]     Here, Hall admitted that his fingerprints would be on 4 of the 11 firearms that were found in the room where he stayed. (Doc. 15, at 15.) The officers saw him exit this room when they entered the premise. (*Id.*) All 11 firearms seized were found in that room. (*Id.*) Thus, the government could establish by a preponderance of the evidence that Hall was either in actual possession or constructive possession of all 11 firearms at the time of his arrest (*id.*). *Compare, e.g., United States v. Johnson,* 450 Fed.Appx. 878, 885 (11th Cir. Jan. 9, 2012) ("Possession can be actual or constructive, and the government can prove possession through direct or circumstantial evidence. Constructive possession exists when a defendant has knowledge of the item possessed coupled with the ability to exert control over it or over the premises . . . in which the contraband was concealed." (internal citations omitted)) and *United States v. Perez,* 661 F.3d 568, 576 (11th Cir. 2011) ("Possession of a firearm may be either actual or constructive. Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm. A defendant's presence in the vicinity of a firearm or mere association with another who possesses that gun is insufficient; however, at the same time, the firearm need not be on or near the defendant's person in order to amount to knowing possession. As long as the Government proves, through either direct or circumstantial evidence that the defendant (1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm, the defendant's constructive possession of that firearm is shown." (internal citations, quotation marks and brackets omitted)) *with United States v. Molina,* 443 F.3d 824, 830 (11th Cir. 2006) (concluding that sufficient evidence existed to support conviction for possessing a firearm in furtherance of a drug trafficking crime where the gun was accessible and was in close proximity to drugs, digital scales, and a large amount of money); *see United States v. Wright,* 392 F.3d 1269, 1273, 1273-1274 & 1274 (11th Cir. 2004) ("The government need not prove actual possession in order to fulfill the 'knowing' requirement of § 922(g)(1). Rather, it may be shown through constructive possession. The firearm need not be on or near the defendant's person in order to amount to knowing possession. Moreover, we have held . . . [] a defendant had knowing possession of a firearm when driving a car with the weapon beneath the driver's seat. In the instant case, a reasonable jury could believe beyond a reasonable doubt that Wright was in knowing possession of the firearm. Possession can be shown by circumstantial as well as direct evidence. Possession can be either actual or constructive. In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself . . . or the vehicle in which contraband is concealed. There is no dispute that there was a weapon in the vehicle. Officers found the firearm under Wright's seat, next to an open bottle of cold beer. Wright owned the automobile in which the firearm was carried. Wright had been operating the car when the officers pulled him over. Evidence showed Wright was driving under the influence and once officers attempted to arrest him, Wright aggressively resisted, which could indicate that Wright only resisted after he realized officers would impound the car and discover the gun. . . . ***The fact that Wright's father testified that the gun belonged to him and that he accidently left it in his son's vehicle does not detract from the evidence.***" (internal citations and quotation marks omitted; emphasis supplied)), *cert. denied,* 544 U.S. 968, 125 S.Ct. 1751, 161 L.Ed.2d 615 (2005).

contained enhancements under § 2.K2.1(b)(1)(B) and § 2K2.1(b)(6) (*see* Doc. 11, at 2 (specifically, the worksheet states that the § 2.K2.1(b)(1)(B) enhancement is for a "total of[] 11 firearms" and the § 2K2.1(b)(6) enhancement is for "possession of the firearms during another felony offense (possession of drugs)); and (6) that the Government was willing to seek the low end of the sentencing guidelines in exchange for Hall's agreement to enter a plea (*see* Doc. 28 (Sentencing Hearing)).

It is fair to infer that Harper was not certain at the time that he advised his client to sign the plea agreement that the base level would increase. (*Compare* Doc. 11, at 2 *with* Doc. 20, at 6.) The change in the base level from a 14 to a 20 was the result of correctly applying "U.S.S.G. § 2K2.1(a)(4)(A), which states that if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense, the base offense level is 20." (Doc. 20, at 6.) If Harper made a mistake in confirming the appropriate Base Offense Level, it was in failing to ensure that the guideline range calculated during the Probation Office Conference was correct. Even so, both Harper and Hall knew at the time the plea agreement was signed that the calculations discussed during the probation conference were not final numbers and, based on a complete review of all relevant sentencing information, could increase. (Doc. 40 (plea colloquy), at 9-11.) At the time that the Court gave this warning, no one knew with any certainty what the sentencing range would be. Nonetheless, Hall argues that Harper should have known to object to the imposition of the enhancements found in §§ 2K2.1(b)(1)(B) and 2K2.1(b)(6), a clear misunderstanding of the reason for his increased sentence.

Upon receipt of the Presentence Report, Harper contacted the probation office to get an explanation for the increase in the recommendation. (Doc. 28, Sentencing Hearing, at 2-4.) Harper was made aware at this time that probation had made an error in the configuration of Hall's initial sentencing exposure. (*Id.*) The presentence investigative report increased Hall's base level from 14 to 20, thus increasing Hall's sentencing exposure. (Doc. 20, at 6.) Rather than objecting to the corrected calculations or seeking to withdraw the plea, Harper filed a notice with this Court stating that Hall had no objections to the presentence investigation report as filed. (Doc. 18.) In addition, Hall does not allege that he ever asked Harper to file any objection to this report. (*See* Docs. 39, 48, 50, 51 & 58.)

Upon review of Hall's criminal history, it is clear that even if Harper had objected to the increase in Hall's base level from 14 to 20, based on Hall's prior conviction for first-degree possession of marijuana in the Mobile County Circuit Court, Harper would not have been successful.[21] Further, Hall never alleges nor addresses this increase in the base level as an explanation for the increase in the sentencing recommendation. Instead, Hall simply alleges that Harper's failure to object to the § 2K2.1(b)(1)(B) and § 2K2.1(b)(6) enhancements should rise to the level of ineffective assistance of counsel.[22]

---

[21]    Subsection (a)(4)(a) provides for an increase in the base level from 14 to 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." §2K2.1(a)(4). Commentary note 10 to §2K2.1 states that "[f]or the purpose of applying subsection (a)(4)(a), use only those felony convictions that receive criminal history points under §4A1.1(a)." U.S.S.G. 2K2.1, n 10. According to Hall's presentence investigation report, on September 1, 1999 Hall was convicted of the first-degree possession of marijuana in the Mobile County Circuit Court. (Doc. 20, at 10.) This conviction received a §4A1.1(a) point valuation. (*Id.*) Therefore, the increase in Hall's base level was done in accordance with the sentencing guidelines.

[22]    Hall's conclusory argument that

As the enhancements were not responsible for the increase in the original numbers provided to Hall during the plea negotiations, any alleged failure of Harper to object to their use would not have affected the outcome of Hall's sentencing. Therefore, Hall cannot establish that he was by prejudiced by Harper's decision to not make any formal objections to the use of the enhancements. Thus, this claim also lacks merit.

To the extent Hall argues that Harper should have objected to the applicability of sentencing enhancements, such an argument is frivolous since the imposition of the sentencing enhancements was clearly appropriate. "The government bears the burden of

---

> [T]he only difference between counsel's estimate of the likely sentence, 77-96 months, and the Court's ultimate determination, 110-137 months, was the enhancements applicable to Hall's case. The enhancements were readily discoverable by counsel Harper and competent counsel under prevailing professional norms would have researched and been accurately abreast of the legal precedents and Sentencing Guidelines in informing a defendant of the likely sentencing exposure

is flawed. (Doc. 48, at 4.) As discussed, the enhancements are not responsible for increasing Hall's sentencing exposure: it was the increase in the base level that resulted in the increased sentence. Both enhancements were accounted for and brought to Hall's attention at the initial conference with probation. (Doc. 11, at 2.) Further, Hall actually received a reduction on his presentence investigation report as it relates to the § 2K2.1(b)(6) enhancement. (*Compare* Doc. 11, at 2 (listing an increase 6 points) *with* Doc. 20, at 6 (listing an increase of only 4 points).) Therefore, this argument is clearly flawed and without merit. *See Patterson v. United States*, 2011 WL 6090249, at *2 (N.D. Tex. Nov. 16, 2011) ("Petitioner claims that counsel allowed him to enter into a coerced guilty plea. However, Petitioner fails to cite any facts that show how his plea was coerced. Conclusory allegations are insufficient to prove claims of ineffective assistance of counsel. Prisoners challenging their guilty pleas on collateral review must overcome a strong presumption of verity accorded solemn declarations made in open court. Prisoners must also overcome the presumption of regularity and great weight accorded court documents." (internal citations and quotation marks omitted)), *report and recommendation adopted*, 2011 WL 6219567 (N.D. Tex. Dec. 7, 2011); *McAffee v. United States*, 2006 WL 3747329, at *3 (M.D. Fla. Dec. 18, 2006) ("Given the strong presumption of verity accorded Petitioner's sworn statements during his plea hearing, his conclusory allegation of ineffective assistance of counsel, unsupported by specifics, is subject to summary dismissal, as are his contentions that are wholly incredible in the face of the record. Accordingly, given Petitioner's sworn statements during the plea colloquy and in his plea agreement that he was pleading guilty freely and voluntarily without threats, force, intimidation, or coercion of any kind, Petitioner's allegations that his attorney influenced him to agree to the appeal waiver are refuted by the record. His claim of ineffective assistance is without merit." (internal citations, quotation marks, and ellipses omitted)); *cf. United States v. Torres*, 129 F.3d 710, 715 (2nd Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement[.]" *United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir.2006) (per curiam). "Although not as rigorous as the reasonable doubt or clear and convincing standards, the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir.1995).

### a. § 2K2.1(b)(1)(B) Enhancement

Under the sentencing guidelines, 4 points shall be added to a defendant's total offense level if the underlying offense involved 8 to 24 firearms. U.S.S.G. § 2K2.1(b)(1)(B). Based on the evidence provided, the Government could successfully prove by a preponderance of the evidence that Hall was in possession of 11 firearms at the time of his arrest allowing for the § 2K2.1(b)(1)(B) enhancement. (*See*, Doc. 15, at 14-15; *see also*, Footnote 14 outlining the applicable law regarding the possession, both actual and constructive, of a firearm.) Thus, this claim lacks merit.

### b. § 2K2.1(b)(6) Enhancement

Hall additionally alleges that Harper should have objected to the use of the §2K2.1(b)(6) enhancement. Under the guidelines, if the defendant "used or possessed any firearm or ammunition in connection with another felony offense" the total offense level shall be "increase[d] by 4 levels." U.S.S.G. § 2K2.1(b)(6). Based on Hall's additional State case where he was charged with felony possession of a controlled substance and Hall's admission that he was aware there was a controlled substance found at the time of his arrest and that it constitutes a felony, the Government clearly had the ability to prove

by a preponderance of the evidence that Hall possessed firearms in connection with[23] another felony offense allowing the § 2K2.1(b)(6) enhancement. (Doc. 48, at 9 ("Hall acknowledges the fact that he was charged with a felony as the Government advances."); *see also*, Doc. 20, at 6, 14; Doc. 47 Ex. A (copy of Mobile County, Alabama case file charging Hall with Possession of a Controlled Substance in violation of Ala. Code 13A-

---

[23]     Hall alleges that the Court should construe the term "in connection with" to imply that the firearms were used to facilitate the additional felony compared with a literal interpretation—namely that the additional felony was discovered at the same time as the underlying offense. (Doc. 48, 9.)  However, the Eleventh Circuit has made it clear that "[s]o long as the weapon's presence is not attributable only to accident or mere coincidence, a section [2K2.1(b)(6)] enhancement is warranted under *Rhind* [*v. United States,* 289 F.3d 690 (11th Cir. 2002)] if the firearm is available during the commission of the underlying offense. *United States v. Cabezas*, 223 Fed. Appx. 944, 945 (11th Cir. May 9, 2007) (unpublished). Further, the Eleventh Circuit expressly rejected the "facilitation" standard in *Rhind*. *Cabezas*, 223 Fed. Appx. at 945; *see also*, *Rhind*, 289 F.3d at 695 (relying on prior precedent from other sections of the sentencing guidelines, the Eleventh Circuit "determined that the meaning of the phrase 'in connection with,' contained within [] section [2K2.1(b)(6)], 'merely reflects the context of [the defendant's] possession of the firearm.'" (internal citations omitted)). Nonetheless, Hall argues that per Comment 14 to the sentencing guidelines, as amended since *Rhind* but not since *Cabezas*, "in connection with for the purposes of subsection (b)(6)(B) [applies] if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense," such that this Court must use the higher facilitation standard. (Doc. 48, at 9-13). Although Hall's argument may be supported to a degree in *United States v. Osborne*, 590 F. Supp. 2d 1330, 1334, 1334-1336 & 1336 (M.D. Ala. 2008) ("[C]omment note 14 lays out two different interpretations for the phrase 'in connection with' as used in § 2K2.1(b)(6): If the underlying felony offense is a drug-*trafficking* offense, then the interpretation offered in 14(B)(ii) applies and the government need only show that the gun was in 'close proximity' to the drugs; if the underlying offense is any other crime, such as a drug-*possession* offense, then the interpretation offered in 14(A) applies and the government must show that the weapon 'facilitated' the offense. Thus, the court must first determine a threshold question: Was Osborne engaged in drug *trafficking* or simply drug *possession*?" In answering this question, the district court found that the defendant's possession of 10 ecstasy pills was not enough to establish that he was a drug trafficker, thus requiring the higher standard of facilitation in order to allow the § 2K2.1(b)(6) enhancement. Relying on this higher burden, the Court concluded "that [the defendant] did not carry the weapon to embolden himself, or to protect the ecstasy, or 'in connection with' the ecstasy in any other way; rather, he carried the ecstasy and the weapon at the same time as a 'result of accident or coincidence.'"), the Eleventh Circuit continues to reject such a restrictive interpretation, *United States v. Jones*, 486 Fed. Appx. 104, 107 (11th Cir. Aug. 8, 2012) (finding that although "in connection with" means "'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense[,]'" under the sentencing guidelines, the Eleventh Circuit has "consistently adopted an expansive interpretation of the phrase 'in connection with.'" (quoting *United States v. Matos–Rodriguez*, 188 F.3d 1300, 1308–09 (11th Cir.1999)). Therefore, the Court is bound to accept the Eleventh Circuit's expansive interpretation of "in connection with," such that mere possession, so long as not accidental or coincidental, is enough.

012-212, a felony under Alabama law.) Therefore, Hall cannot show that Harper's decision to not formally object to the use of this enhancement was defective or prejudicial trial strategy during sentencing. Thus, this claim also lacks merit.

2. Additional Considerations.

It is also important to note that Harper did bring to the Court's attention the misinformation that he received during negotiations and asked the Court to consider the actual facts of this case compared to the cold record the Court had before it. (*See*, Doc. 28 (Sentencing Transcript).) Further, Hall was given several opportunities to object to the use of the enhancements or to argue that his counsel was ineffective during sentencing. (*Id*.) Also, it is Hall's only contention that "the 3-year difference at the time of sentencing was the *complete result* of the enhancements," which the Court has found to be an erroneous assertion. (See, Doc. 48, at 5) (emphasis added).

As a matter of strategy, it is clear that Harper, recognizing that he did not have valid objections to the sentencing calculations contained in the presentence report, attempted to convince Judge Granade that a downward departure was appropriate under the circumstances. This appears to have been sound strategy since the erroneous calculation of the guideline range in this case does not constitute deficient performance of counsel. *Cf. United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) ("To the extent that [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."). Additionally, when a defendant is informed of the correct sentencing range

by the court during the plea colloquy, there is no prejudice to the defendant when his attorney has miscalculated and misinformed him of the forecasted sentencing range. *See e.g., Cruz v. United States*, 188 Fed.Appx. 908, 914 (11th Cir. Jul. 11, 2006), *cert. denied*, 549 U.S. 1064, 127 S.Ct. 690, 166 L.Ed.2d 535 (2006). Thus, Hall cannot establish either that Harper was deficient in his representation or that Hall was prejudiced by Harper's actions.

    3.  The Court's Application of the Sentencing Enhancements.

    To the extent Hall also challenges the Court's consideration of the sentencing enhancements claiming that it was plain error for the Court to do so, his argument must fail. While the undersigned is of the opinion that this claim is procedurally barred from review based on Hall's failure to challenge these alleged errors on appeal,[24] as explained hereinafter this claim also lacks substantive merit.[25]

---

[24]     "A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of cause and prejudice or a fundamental miscarriage of justice," *Genge v. United States*, 279 Fed. Appx. 897, 898 (11th Cir. May 30, 2008) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 166-68, 102 S.Ct. 1584, 1593-94, 71 L.Ed.2d 816 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)). Moreover, merely asserting a substantive claim of ineffective assistance of counsel does not "establish[] cause to excuse [ ] procedural default[;]" "*in order to constitute cause, ineffective assistance claims must have merit.*" *Reynolds v. United States*, 2010 WL 1006257, *4 (S.D. Ga. Jan. 26, 2010) (citation omitted; emphasis added), *report and recommendation adopted*, 2010 WL 1006253 (S.D. Ga. Mar. 17, 2010). As explained at length in this recommendation, Hall has failed to make a meritorious substantive claim for ineffective assistance of counsel. Further, Hall has not argued that counsel was ineffective in failing to appeal nor has Hall ever argued that he requested Harper to file an appeal. (*See* Docs. 39, 48, 50, 51 & 58.) Accordingly, Hall has defaulted on these grounds challenging the Court's findings on February 15, 2012.

[25]     Additionally Hall argues that he is not procedurally barred from raising this issue on appeal because the waiver clause, if valid, in his plea agreement specifically provides an exception for an appeal of this nature. (Doc. 39, at 16.) Hall is correct that his plea agreement contains an exceptions clause, however he confuses the distinction between a direct appeal with a post-judgment collateral attack on the constitutionality of his sentence. The clause states:

During the sentencing hearing, Hall's counsel was asked whether he had gone over the presentence report with Hall. (Doc. 28, at 2.) Hall's counsel responded in the affirmative. (*Id.*) The Court then asked Harper whether there were any objections to the report. (*Id.*) Harper responded that there were not any objections. (*Id.*) The Court then stated that it found "that the total offense level in [Hall's] case [was] a 25 with a criminal history category of VI. Are there any objections to those findings?" (*Id.*) Harper responded that there were not. (*Id.*) During this entire exchange, Hall stood next to Harper with the right and ability to speak in his own defense at any time; however Hall did not say anything. (*Id.*) Later in the hearing, the Court specifically asked Hall whether he had anything he would like to say to the Court. (*Id*. at 5.) Hall did not mention anything about the sentencing enhancements or ineffective assistance of counsel that he now alleges. (*Id*. at 6.)

Hall has never articulated how the Court erred in considering the enhancements, only that the mere fact that the enhancements were before the Court should be enough to constitute an error. Without any objections to the application of the sentencing enhancements, Hall cannot claim that it was error for the Court to consider the facts that it was presented with, namely the information contained in the presentence

---

**a. EXCEPTIONS**. The defendant reserves the right to timely file a direct appeal challenging:

(1) Any sentence imposed in excess of the statutory maximum;
(2) Any sentence which constitutes an upward departure or variance from the advisory guideline range.

(Doc. 15, at 11.) Per the express terms of the clause, Hall had a procedural right to a direct appeal, if filed within 14 days of sentencing, to challenge "any sentence which constitutes an upward departure or variance from the advisory guideline range." (*Id.*) However, a Motion to Alter, Amend, or Vacate under § 2255, the statute under which Hall brings this claim, is not a direct appeal, but rather a collateral attack on Hall's sentence. 28 U.S.C. § 2255 Thus, Hall is foreclosed from arguing that the clause in his plea agreement applies to this action.

investigation report. Thus, this claim is nothing more than a restatement of Hall's ineffective assistance of counsel claim explained in detailed above. The applicability of the sentencing enhancements was proper and, therefore, Harper's failure to object to Judge Granade considering them during the sentencing hearing could never establish deficient representation.

C.      Alleyne Claim

Lastly, Hall asks this Court to apply the Supreme Court's recent decision in *Alleyne v. United States,* 133 St. Ct. 2151, 186 L.Ed.2d 314 (2013), to his case. In *Alleyne,* the Supreme Court held that any fact that increases the statutory minimum sentence for a crime is an "element" of the offense, not a "sentencing factor," that must be submitted to jury and proven beyond a reasonable doubt. *Id*. at 2164. However, Hall was sentenced prior to the applicability of *Alleyne.*  Additionally, the matter before the undersigned is a collateral attack on Hall's conviction and sentence, not a direct appeal. Therefore, *Alleyne* does not apply to Hall's present action.  *Jeanty v. Warden, FCI-Miami,* 757 F.3d 1283, 1285-86 (11th Cir. 2014).

D.  Evidentiary Hearing.

There is no need for a hearing in this matter because Hall has failed to proffer "**credible** and **specific evidence** entitling him to relief." *United States v. Salmoran-Calderon,* 2012 WL 6827478, *20 (N.D. Fla. Nov. 27, 2012) (citations omitted; emphasis supplied), *report and recommendation adopted,* 2013 WL 132481 (N.D. Fla. Jan. 10, 2013). In other words, petitioner is not entitled to an evidentiary hearing in this case because his allegations are either frivolous, affirmatively contradicted by the record, or, otherwise, even taking the facts he states as true, same would not entitle him to relief. *Aron v. United*

*States,* 291 F.3d 708, 714-715 (11th Cir. 2002) ("[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' . . . Although we have stated that a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, no such circumstances are present here." (internal citations omitted)); *see also United States v. Bejacmar,* 217 Fed.Appx. 919, 921 (11th Cir. Feb. 15, 2007) ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing."); *see Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." (internal quotation marks omitted)), *cert. denied sub nom. Tejada v. Singletary,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *cf. Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir.) ("Because the 1999 affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion."), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

## V. CERTIFICATE OF APPEALABILITY

In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Hall's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28

U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Because all the ineffective-assistance-of-counsel claims are procedurally barred,[26] Hall is not entitled to a certificate of appealability on those claims. Where, as in the case of the ineffective-assistance-of-counsel claims presented here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the habeas petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the habeas petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as unexcused procedurally defaulted claims are barred from a § 2255 proceeding, *see Lynn*, 365 F.3d at 1234, a reasonable jurist could not conclude either that this Court is in error in

---

[26]    As heretofore explained, even if these claims were considered on the merits, Hall's position would not prevail.

dismissing those claims in the instant petition or that Hall should be allowed to proceed further on these claims. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the habeas petition or that the petitioner should be allowed to proceed further.").

To the extent the merits of Hall's claims of ineffective assistance of counsel have been reviewed, he is not entitled to a certificate of appealability on his claims. Where a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when Hall demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack*, 529 U.S. at 484; *see also id.* at 483–84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the habeas petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"). With respect to Hall's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an

objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson*, CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States*, 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted*, 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth*, 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The petitioner's rights were not violated in this cause and his request to vacate, set aside or correct his sentence (Doc. 39), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013)

(emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 22nd day of October, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**